[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2010
JOHN LEY
CLERK

No. 09-15297
Non-Argument Calendar

_____

D. C. Docket No. 08-00091-CV-4-SPM-WCS

YILI TSENG,

Plaintiff-Appellant,

versus

FLORIDA A&M UNIVERSITY,
FLORIDA A&M UNIVERSITY
BOARD OF TRUSTEES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 27, 2010)

Before EDMONDSON, CARNES and FAY, Circuit Judges.

PER CURIAM:

Yili Tseng, a native of Taiwan proceeding pro se, appeals from the district court's grant of summary judgment in favor of Florida A&M University and its board of trustees (FAMU) in his employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Tseng was a visiting professor in FAMU's Department of Computer and Information Science. He alleged that FAMU discriminated against him on the basis of national origin when it promoted Hong-Mei Chi, another visiting professor who was from mainland China, to a tenure-track position instead of him, even though he was more qualified. FAMU responded that it picked Chi over him because she had better communication skills and a stronger record of collaboration with other faculty members. The district court found that Tseng had not presented any direct evidence of national origin discrimination, and had not shown that FAMU's proffered reasons for its decision were a pretext for discrimination. We affirm.

Title VII prohibits employers from discriminating against employees on the basis of national origin. See 42 U.S.C. § 2000e-2(a). A plaintiff may establish a Title VII claim by presenting direct evidence of discrimination, or circumstantial evidence that creates an inference of discrimination. Bass v. Bd. of County Comm'rs., 256 F.3d 1095, 1103 (11th Cir. 2001), abrogation on other grounds recognized by Crawford v. Carroll, 529 F.3d 961 (11th Cir. 2008).

## I. Direct Evidence

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption.  Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [the protected characteristic] . . . constitute direct evidence of discrimination."  Bass, 256 F.3d at 1105 (quotations and citations omitted).  As direct evidence, Tseng offers several comments by his supervisors in annual evaluations and in faculty meetings that "language is a challenge [for him]" and that he needed to "work on his English skills."  Tseng argues that these comments unfairly "picked on" him for his accent and therefore constituted discrimination on the basis of his Taiwanese origin.

Discrimination based on accent can be national origin discrimination.  See Akouri v. State of Fla. Dep't of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (supervisor's statement that Lebanese plaintiff was turned down for promotion because white coworkers were "not going to take orders from you, especially if you have an accent" was direct evidence of discrimination).  However, an employee's heavy accent or difficulty with spoken English can be a legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance, as they certainly are in a teaching position.

3

See Jiminez v. Mary Washington College, 57 F.3d 369, 380 (4th Cir. 1995) ("[R]equiring that a professor speak the native tongue in order to convey his ideas is not any form of discrimination, invidious or otherwise."); cf. Fragante v. City and County of Honolulu, 888 F.2d 591, 596–97 (9th Cir. 1989) (employer legitimately considered plaintiff's "heavy" and "difficult to understand" Filipino accent, where clerk job required interaction with general public and "oral ability to communicate effectively in English" was essential).

An investigator for the Florida Commission on Human Rights, who interviewed Tseng in connection with his discrimination claim, observed that his "accent and speech patterns might make it difficult" for an average listener to understand him in a classroom setting.[1]  Tseng himself agreed at his deposition that his English was "sometimes difficult to understand."  He does not claim that anyone at FAMU mocked his accent or made disparaging remarks about the Taiwanese, and none of the statements he complained about specifically referred to his nationality.  The comments could simply have been meant to help Tseng improve his effectiveness as a teacher.  See Bina v. Providence College, 39 F.3d 21, 26 (1st Cir. 1994) ("[R]eferences to audience difficulty in understanding [plaintiff professor] may reasonably be interpreted as expressing a concern about

_____

[1] Tseng's response to that comment was that the investigator must have been "prejudice[d]."

4

his ability to communicate to students rather than discriminatory animus based on ethnicity or accent."). The fact that Tseng was passed over in favor of another foreign national, who also was not a native speaker of English, hardly supports a conclusion that FAMU acted out of animus toward foreigners or foreign accents. Because Tseng failed to identify any "blatant" remarks or actions "whose intent could be nothing other than to discriminate," the district court correctly found that he had not shown direct evidence of discrimination. See Bass, 256 F.3d at 1105.

## II. Circumstantial Evidence

In the absence of direct evidence, a plaintiff may establish a Title VII claim through circumstantial evidence that creates an inference of discrimination. Bass, 256 F.3d at 1103. To evaluate a claim based on circumstantial evidence, we use the framework established in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Id. at 1103–04. Under this framework, Tseng established a prima facie case of discrimination by showing that: (1) he was qualified for the position; (2) he was rejected despite his qualifications; and (3) an equally or less qualified employee who was not a member of his protected group (Taiwanese nationals) was hired in his place. See id. at 1104. FAMU did not dispute that Tseng was qualified, and argued only that Chi was better qualified. The burden of production then shifted to FAMU to offer a legitimate, non-discriminatory reason

5

for its decision to hire Chi instead of Tseng.  See id.  FAMU did so, pointing to Chi's superior communication skills and better record of collaboration.  Accordingly, Tseng needed to show that FAMU's proffered reasons were pretexts for discrimination on the basis of national origin.  See id.

To establish pretext, Tseng must show both (1) that FAMU's stated reasons for hiring Chi were false, and (2) that discrimination on the basis of Tseng's Taiwanese origin was the real reason.  See Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006).  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with [the employer's] reason is not sufficient."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (citation omitted).  Mere irregularities in the employer's internal hiring procedures are not enough to show pretext or establish discriminatory intent.  See Springer v. Convergys Customer Mgmt. Group, 509 F.3d 1344, 1350 (11th Cir. 2007).  When a plaintiff asserts as Tseng does that discriminatory intent should be inferred from his superior qualifications, the test is whether the difference in qualifications is "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Brooks, 446 F.3d at 1163.

6

Tseng and Chi had generally similar backgrounds and qualifications, except that Tseng had slightly more teaching experience while Chi had several more publications. Tseng conceded that Chi had done more collaborative work with other faculty than he had done. As evidence that Chi's English-language communication skills were not superior to his own, Tseng pointed only to a handful of grammatical errors in three short emails written by Chi.[2] FAMU's choice between two candidates of roughly similar qualifications was not unreasonable. Even if Tseng were slightly more qualified than Chi in some respects, there was not such a disparity between them that "no reasonable person" could have selected Chi over him. See id.

Tseng's evidence does not show that FAMU's proffered reasons were false. Even if it did, Tseng offers nothing to suggest that a discriminatory animus against Taiwanese or preference for mainland Chinese was the real motivation for FAMU's decision. See id. FAMU hired and rehired Tseng for the visiting position four years in a row, all the while being well aware of his nationality. The district court correctly concluded that Tseng failed to make a circumstantial case for discrimination, and it did not err in granting summary judgment to FAMU.

**AFFIRMED.**

---

[2] In response, the defendants note a number of similar grammatical and typographical errors in Tseng's own court filings.